# Commonwealth, *ex rel.* The Attorney General, *versus* The Lykens Water Company.

1. Section eleven of the Act of April 17th, 1876 (P. L., 37), which provides that if a company, incorporated under that Act or the Act of April 29th, 1874 (P. L., 73), to which it is a supplement, fails to carry on its works and construct the necessary buildings, etc., within two years from the date of letters patent, then the rights and privileges granted shall revert to the Commonwealth.

   *Held,* That upon the failure of a company to comply with the above provisions, its rights and privileges revert to the Commonwealth without any judicial action or further legislation, and the Commonwealth can then grant these privileges to another company to be formed for the same purpose.

2. The provisions of § 11 of the Act of April 17th, 1876, are a part of a charter, granted under its general provisions, and hence the general rule of law, that a corporation is not to be deemed to be dissolved by non-user of its franchises, does not apply.

3. The Act of June 13th, 1883 (P. L., 122), extending for two years the time within which an existing corporation may avail itself of its franchises to prevent forfeiture, does not apply to a company, which had, at that time, lost its rights and privileges by a failure to comply within two years with the requirements of § 11 of the Act of April 17th, 1876.

June 2d, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Dauphin county:* Of May Term 1885, No. 16.

This was, in the court below, a suggestion for a writ of *quo*

[Commonwealth *v.* Lykens Water Co.]

*warranto* filed by Lewis C. Cassidy, Attorney General of the Commonwealth, against The Lykens Water Company, incorporated July 20th, 1883, to show by what warrant it claims to be and exercise the rights of a corporation.

The suggestion set forth in substance the following facts:

(1.) That the respondent, ever since July 20th, 1883, claims, without lawful warrant, to be a corporation in the name of The Lykens Water Company, with power to supply pure water to the borough of Lykens, in the county of Dauphin, and to provide, erect and maintain all the necessary appliances therefor.    (2.) That said respondent was not lawfully created for the purposes aforesaid, because on the 6th day of May, 1880, another corporation was formed in the name of The Lykens Water Company, with exclusive power to furnish water to said borough of Lykens, until eight per cent. dividends had been made and divided among its stockholders. (3.) That The Lykens Water Company, incorporated May 6th, 1880, was in full life and being, and that another company (respondent) was incorporated in the name of The Lykens Water Company, July 20th, 1883, and that the older company had not realized eight per centum upon its capital stock. Wherefore relator prayed the court to award a writ of *quo warranto* against The Lykens Water Company, respondent, to appear and show cause by what warrant they claim to have the franchises and powers claimed.

The writ was issued on this suggestion, and respondent made answer substantially as follows: (1.) That the respondent had been duly incorporated by charter and letters patent issued by the Governor on the 20th of July, 1883, under said General Corporation Laws of 29th April 1874, and the supplements thereto, whereby respondent was empowered to do the several matters and things complained of.    (2.) That the said Lykens Water Company, incorporated May 6th, 1880, prior to said 20th of July, 1883, had forfeited the powers and privileges conferred upon it, in that it had failed for two years and upwards to do the things required of it by said 11th section of the Act approved April 17th, 1876.

The said section eleven provides as follows: "If any company incorporated under this Act, or the Act to which this is a supplement, shall not proceed to carry on its work, and construct its necessary buildings, structures or improvements within the space of two years from the date of its letters patent, and shall not within the space of five years thereafter complete the same, the rights and privileges thereby granted to said corporation shall revert to the Commonwealth."

The relator replied to the above answer that a corporation was formed, created and incorporated under letters patent,

issued by the Commonwealth prior to the alleged incorporation of the defendant, as the said defendant in its said plea and answers avers and admits, with exclusive right to enjoy its corporate franchises and privileges in the district or locality covered by the alleged charter of defendant, and that said prior corporation is still in existence, and exercised its corporate privileges at the date of the filing of the said suggestion, and still exercises the same, which facts are not denied in the said plea and answer. Relator also claimed that by the provisions of the Act of June 13th, 1883, § 5, (P. L.; 123,) the time within which it could proceed to carry on its works so as to retain its privileges, was enlarged to two years from the date of said Act, which time has not yet elapsed.

On the trial, before SIMONTON, P. J., the evidence consisted almost exclusively of the papers and Acts of Assembly.

The court directed the jury to find a verdict for the relator, subject, *inter alia,* to the following questions of law reserved, viz.: " Whether the restriction as to the time within which companies, incorporated under the Act of 1874 and its several supplements, are bound to proceed to carry on their works, and construct their necessary buildings, etc., is extended by the fifth section of the Act of the 13th of June, 1883; and the question, therefore, whether at the time this proceeding began the time had or had not yet expired within which the company No. 1 might proceed to construct its works, and carry on its operations so as to retain its exclusive privileges."

A verdict was accordingly rendered for the relator. Subsequently, after argument, the court entered judgment for respondent on the point of law reserved, *non obstante veredicto,* filing the following opinion: If the Act of 1876 stood alone, it would be clear that, before the relator was incorporated, the exclusive right granted to the first company by its charter had been forfeited by its failure to carry on its works. But it is argued that this calamity was averted by the provisions of section five of the Act of 1883, and that the time when a forfeiture of rights for failure to perform would occur was extended for two years, which have not yet elapsed, from the date of the passage of this Act.

We must, therefore, determine the relation of these two Acts to each other, and the construction of each, so far as it affects the case before us. And in doing so, we must bear in mind that the grant of exclusive privileges to one person or corporation is contrary to the general public policy of the Commonwealth, and that these Acts are, virtually, parts of the charters of the corporations which are entitled to claim the benefit of their provisions; and they must, therefore, be construed upon the principles which are applied in the construc-

.tion of Statutes contrary to general public policy and of acts of incorporation.

These rules have been frequently declared by the courts.

Thus, " statutes in derogation of the common law, and contrary to the general policy of the public, are always to be construed strictly : Esterley's Appeal, 4 P. F. S., 192. No rule is better settled than that charters of incorporation are to be construed strictly against the corporation : Cooley's Const. Lim., (fifth ed.) 488–490 ; Comth. *v.* Erie and Northeast R. R. Co., 3 Cas., 339.

" The rule of construction in this class of cases is that it shall be most strongly against the corporation. Every reasonable doubt is to be revolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms, or by an implication equally clear. The affirmative must be shown. Silence is negative, and doubt is fatal to the claim. This doctrine is vital to the public welfare : " Fertilizing Company v. Hyde Park, 97 U. S., 659, per Mr. Justice SWAYNE.

Applying these principles, we do not think that the forfeiture declared by the Act of 1876, so far as this case is concerned, is averted or removed by the Act of 1883. The forfeiture had occurred more than a year before the latter Act was passed. . . . . .

Hence, we conclude that the company incorporated May 6th, 1880, lost its existence, rights and privileges on and after two years from that date ; that these were not restored to it by the Act of 1883. That, therefore, the existence of the company was no bar to the incorporation of the company respondent in this case, but that it exists legally with the rights conferred by its charter, and for these reasons judgment must be entered for the respondent, *non obstante veredicto.*"

The relator then took this writ, assigning for error (1) the assumption on the part of the court that the Lykens Water Company, incorporated May 6th, 1880, had not performed the things required by the Act of April 17th, 1876. (2) The refusal to hold that the Act of June 13th, 1883, extended the time within which they could perform the things required and (3) the entering of the judgment, *non obstante veredicto.*

*James C. Durbin,* (*Lewis C. Cassidy,* Attorney General, *Robert Snodgrass,* Deputy Attorney General, and *George H. Irwin* with him), for plaintiff in error.

It has never been admitted, nor is there one scintilla of evidence to show that the company first incorporated was in default, or that it had, in any way, neglected to do the things required by its charter and the Act of April 17th, 1876, section 11.

[Commonwealth *v.* Lykens Water Co.]

It is an old-established principle of law that a corporation is not deemed to be dissolved by reason of any misuser or non-user of its franchises, until the default has been judicially ascertained and declared by a judgment of forfeiture: 2 Kent, *312, note 2 *Ib.*; also, note *a Ib.*, *p. 311; Abbott's Digest of Corporations, 290-1, sections 19 to 23; Angell & Ames on Corporations, 804 and 815 to 818, and note 4, sec., 777; Cochran *v.* Arnold, 8 Sm., 404-5; 9 Phila. R., 283; 10 Phila. R., 362.

The Act of April 17th, 1876, which provides that if such a corporation " does not proceed to carry on its works, etc., within the space of two years, and complete the same within five years, from the date of its letters-patent, its right shall revert to the state," does not say *when* the right shall revert.   Certainly not until the fact of default has been judicially ascertained and declared. It is not pretended that mis-user, non-user, or other default has been judicially ascertained as to the first incorporated Lykens Water Company.   Even if there was evidence, as there was not, that the first company had given cause of forfeiture, section five of Act of June 13th, 1883, (P. L., p. 123,) provides " that any corporation now *in existence* shall have two years from the date of the Act to do and perform the things required by this Act," viz.: to proceed, organize, and carry on its works.   Under the authorities above quoted the existence of the first incorporated company, at the time of the issuing of letters patent to respondent, cannot be doubted.   In any view of the case, the Act would, therefore, apply to the first company.   It may here be observed that the respondent does not claim existence until over a month after the passage of the Act of 1883.

*Louis W. Hall*, (*Francis Jordan* with him), for defendant in error—When information is filed against the respondent in its corporate name, and process has been issued and served accordingly, and the respondent has appeared and pleaded in the same corporate character, its corporate existence cannot afterwards be controverted.   High on Ex. Leg. Rems., Sect. 661; State *v.* Cin. Gas Light Co., 18 Ohio St., 262; State *v.* Com. Bk. of Manchester, 33 Miss., 474; Atty. Gen'l *v.* Bank, 2 Doug., 359.

The contention that the exclusive right granted to the first company by its charter had not been forfeited by its failure to do what it was required to do within the time named by reason of the provisions of section 5, of the Act of 1883, is not correct, so far as this company is concerned; for the company first incorporated was not " in existence " at the date of the passage of that Act.   Time was of the very essence of the

requirement that it should do what was required within two years. It is not necessary that the Attorney General should have taken legal steps to vacate the charter, before the question could be judicially determined as to whether the company had practically lost all rights under it by lapse of time. The Attorney General can yet formally proceed to take proper legal steps to vacate the charter. It has so far only been decided, that the company incorporated May 6th, 1880, lost its existence, rights and privileges, on and after two years from that date, because of its failure to do what it was required to do within that time, and that these were not restored to it by the Act of 1883. That being the case, the existence of the company first incorporated was no bar to the company second incorporated.

It is further submitted that the Act of June 13th, 1883, could not have the effect claimed for it by the relator in this case, because of the 10th section of the XVIth Article of the Constitution of Pennsylvania, which says, *inter alia :* " No law hereafter enacted shall create, renew or extend the charter of more than one corporation."

" To *renew* a charter, is to give a new existence to one which has been forfeited, or which has lost its vitality by lapse of time." Moers v. City of Reading, 9 Harris, 188.

CHIEF JUSTICE MERCUR delivered the opinion of the court October 5th, 1885.

This is an attempt to annul the charter of the respondent to which letters patent, regular in form, issued on the 20th of July, 1883. The ground of complaint is that letters patent had previously issued to another corporation of the same name, giving to it the exclusive right to enjoy the same rights and privileges in the same territory. It is admitted that the corporation, for the benefit of which the charter of the respondent is attacked, was duly incorporated on the 6th of May, 1880, under the Act of 29th April, 1874 and its supplements. Section 11 of the supplement of 17th April, 1876, *inter alia* declares, " if any company incorporated under this Act or the Act to which this is a supplement, shall not proceed to carry on its work, and construct its necessary buildings, structures or improvements within the space of two years from the date of its letters patent. . . . . the rights and privileges thereby granted to said Corporation shall revert to the Commonwealth."

More than three years had elapsed after letters patent were issued to the first corporation, before they were issued to the respondent, yet the former had wholly failed to comply with the requirements of the Act of 1876. By the terms of this Act, all its rights and privileges had reverted to the Com-

monwealth more than a year before it granted the same rights and privileges to the respondent.

It is contended that the first corporation is relieved from a forfeiture of its charter, under section 5 of the Act of 13th June, 1883. It declares "that any corporation now in existence shall have two years from the date of this Act to do and perform the things by this section required." This clause is aplicable only to corporations existing at the time of the passage of the Act. Section 4 of this Act declares, "nothing in this Act contained shall be construed to repeal or authorize the repeal of any of the requirements or restrictions of the said Act of April 29th, 1824, and its supplements, nor to dispense with any of the provisions of the said Act." Language could not more clearly indicate that the Act of 13th June did not intend to infuse life into a corporation that was defunct under the supplementary Act of 17th April, 1876. The purpose of the Act of 13th June was not to restore to life a corporation that was dead, but was to extend to one in full life the time in which it might do and perform the things specified, and thereby continue the life then existing.

The facts of this case relieve it from the application of the general rule of law, that a corporation is not deemed to be dissolved by reason of misuser or non-user of its franchises, nor its rights and privileges forfeited, until default has been judicially ascertained and declared by a judgment of forfeiture.

The limitation of time inheres in the very grant under which the letters patent issued. It is an express clause in the contract under which the corporation was created and its charter accepted. The fact is unquestioned that the first corporation did not perform the acts required to preserve its rights and privileges under the Act of 1876. The two facts then existed whereby, under the provisions of its charter, all its rights and privileges should revert to the Commonwealth. The statute law of the grant itself becomes the law of this case : McLaren *v.* Pennington, 1 Paige Ch. Rep., 102.

When the legislature reserves to itself the right to repeal a charter on the happening of a certain event, it may enact the repeal whenever the event happens, without first invoking the judgment of a court: Crease *v.* Babcock, 23 Pick., 334. The Act of 1876 did not specifically require any action of the legislature to cause the franchises granted to revert to the Commonwealth.

As then after the expiration of the two years nothing had been done under the charter to continue its life, all its franchises in equity reverted to the Commonwealth. The latter resumed them, and afterwards granted them to the respondent. It is unimportant whether the forfeiture be declared by *quo war-*

*ranto* or by other proceeding on the part of the Commonwealth, declaring and affirming the forfeiture and reversion. The latter is now in no position, either for itself or for the benefit of the former corporation, to disturb the vested rights of the respondent: Lumber and Boom Co. *v.* Comth., 4 Out. 438,

The injustice of permitting a corporation to retain, unused, the exclusive right to a power intended to be used for the benefit of the public, is so contrary to public policy that the relator must present a clearer case than he has now shown to justify a reversal of this judgment.

Judgment affirmed.